**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CHRISTOPHER COON,

      **Plaintiff,**

v.                                                                        Case No. 24-4025-DDC-RES

TRANS AM FINANCIAL SERVICES,

      **Defendant.**

_____

## MEMORANDUM AND ORDER

Sometimes love is lost among contracting parties. And sometimes, those feelings extend to adjacent persons or companies. But proximity to a contract—no matter how proximate—doesn't vest a nonparty with authority to enforce it. That's plaintiff's problem here.

Plaintiff Christopher Coon[1] has sued defendant Trans Am Financial Services (now TAFS, Inc.), alleging breach of a factoring services contract.[2] *See generally* Doc. 1. Plaintiff asserts defendant stole his money and now won't release the contract. *Id.* at 4 (Compl. ¶ III). And he alleges defendant's conduct forced him to shut down his business. *Id.* Defendant, in turn, filed a Motion to Dismiss (Doc. 13) for failure to state a claim. It argues plaintiff isn't a party to the

---

[1]    Because plaintiff appears pro se, the court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court can't assume the role of plaintiff's advocate. *Id.* And plaintiff's pro se status doesn't excuse him from "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* The court can't "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[2]    Defendant identifies this change of name and describes itself as an "accounts receivable factoring company that purchases accounts from its clients, primarily from commercial motor carriers, pursuant to factoring services agreements." Doc. 14 at 1.

factoring services contract at issue. Doc. 14 at 1. Defendant emphasizes that plaintiff signed the agreement as a representative of the business. *Id.* Thus, defendant argues, plaintiff isn't a proper party to this dispute. Doc. 13 at 1.

In this Order, the court resolves three pending motions. It denies plaintiff's Motion to Strike (Doc. 16), construing it instead as a response to defendant's Motion to Dismiss. It denies defendant's Motion to Dismiss (Doc. 13) under Fed. R. Civ. P. 17(a)(3), but orders plaintiff to move to substitute the real party in interest within 30 days to avoid dismissal of the Complaint. And it denies as moot plaintiff's Motion to Terminate Contract (Doc. 17). The court explains these decisions, in turn, below.

## I.     Motion to Strike (Doc. 16)

Plaintiff asked the court to strike defendant's Motion to Dismiss (Doc. 13) under Fed. R. Civ. P. 12(f). *See* Doc. 16 at 1. Plaintiff never explains why the court should strike defendant's motion. Instead, plaintiff argues that he is the proper party to enforce the contract because he signed it. *Id.* at 1–2. There are two problems with plaintiff's request.

*First*, Rule 12(f) doesn't apply. That rule allows the court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a *pleading*. Fed. R. Civ. P. 12(f). A motion to dismiss isn't a pleading. *See* Fed. R. Civ. P. 7 (distinguishing "Motions and Other Papers" from "Pleadings" and listing the seven types of pleadings—a list that doesn't include a motion to dismiss). And so the court can't strike one under Rule 12(f). *See Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1326 (D. Kan. 2006) (finding that two renewed motions to dismiss did "not fall within the purview of Rule 12(f)"); *Fed. Nat. Mortgage Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 994 (D.N.M. 2016) ("Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."

(ellipses in original) (quotation cleaned up)); *cf. also Sheldon v. Khanal*, No. 07-2112-KHV, 2008 WL 474262, at *3 n.4 (D. Kan. Feb. 19, 2008) ("In any event, plaintiffs' reply [to motion to reconsider] is not a 'pleading' which the Court may strike under Rule 12(f)."). And even if the challenged motion were a pleading, plaintiff never identifies any portion that's "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f); *see generally* Doc. 16. So, even if the court found material in the Motion to Dismiss strikable under Rule 12(f), that rule doesn't provide the means to do it.

*Second*, plaintiff's Motion to Strike (Doc. 16) reads like a response to defendant's Motion to Dismiss (Doc. 13). The Motion to Dismiss argues that plaintiff isn't the real party in interest or lacks standing. *See* Doc. 14 at 3. Essentially, defendant asserts that plaintiff can't maintain this suit. *Id.* And plaintiff's Motion to Strike responds that he is, in fact, the right person to maintain the suit. Doc. 16 at 1–2. Because plaintiff attempts to rebut defendant's motion to dismiss arguments, the court liberally construes plaintiff's Motion to Strike (Doc. 16) as plaintiff's response to the Motion to Dismiss (Doc. 13). And it evaluates plaintiff's arguments in that filing, below, in ruling defendant's Rule 12(b)(6) motion.

## II.    Motion to Dismiss (Doc. 13)

Defendant's motion seeks dismissal on two grounds: plaintiff "lacks standing and/or is not the real party in interest" to bring this contract claim. Doc. 14 at 3. Standing, in its technical sense, is a constitutional requirement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Prosecuting a case as the real party in interest is a procedural requirement. Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). Defendant cites neither constitutional law, nor Rule 17. *See generally* Doc. 14; Doc. 18. Instead, defendant focuses its arguments on Kansas state law. *See* Doc. 14 at 3–4. Maintaining a suit in the name

of the real party in interest is a procedural rule in federal court.  Fed. R. Civ. P. 17(a)(1).  But, as explained below, one's *status* as a real party in interest under that rule is a substantive question answered by state law.  *See below* § II.D.  Motions to dismiss asserting standing and real-party-in-interest problems are evaluated under different legal standards.  So, the court evaluates the following issues, in this sequence:  (A) whether defendant raises standing or real-party-in-interest issues; (B) which legal standard applies to the defense defendant actually asserts; (C) the facts properly considered under that legal standard; (D) whether plaintiff is the real party in interest; and (E) whether to dismiss this case as a result.

### A.    Standing or Real Party in Interest

Both standing and Rule 17 are at work in every federal court case, but often they function quietly, in almost invisible fashion.  Rule 17 requires plaintiffs to prosecute an action "in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  They also must present an actual case or controversy for the court to have jurisdiction over their claims.  *Clapper*, 568 U.S. at 408 (explaining Article III's case-or-controversy requirement, including the doctrine of standing).  Although the line separating the two requirements often is a blurry one, Rule 17(a) and standing aren't the same thing.  Case law distinguishes between the two, and below, the court reviews those distinctions.

"Standing" is a term often "used loosely . . . to denote the party with a right to bring a particular cause of action."  *FDIC v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990).  But using the word "standing" in a general sense can cause "much confusion[.]"  *Id.*  This is true particularly when distinguishing standing, "in its most technical sense[,] and the concept of a real party in interest under [Rule 17(a).]"  *Id.*  When the wrong plaintiff sues—*i.e.*, someone who's *not* the real party in interest—it doesn't always raise jurisdictional standing concerns.  *See Bath*

*v. RJM Acquisitions LLC*, No. 12-cv-03228-RBJ-KMT, 2013 WL 3296603, at *2 (D. Colo. July 1, 2013) (recognizing that "standing jurisprudence is helpful by analogy in resolving real-party-in-interest issues" but the real-party-in-interest issue doesn't raise justiciability concerns (internal quotation marks and citation omitted)).

In one sentence, defendant references both standing and real-party-in-interest theories. *See* Doc. 14 at 3 ("Plaintiff Coon . . . lacks standing and/or is not the real party in interest[.]"). But defendant's efforts to support these requirements never cite Article III or Fed. R. Civ. P. 17(a). It instead cites two Kansas cases for its substantive argument—both of which address whether plaintiffs had *jurisdictional* standing to sue in Kansas courts. *See id.* at 3–4 (first citing *Hartman v. City of Mission*, 233 P.3d 755 (Kan. App. 2010); and then citing *Peterson v. Ferrell*, 349 P.3d 1269 (Kan. 2015)).

But defendant never musters any authority to support its proposition that plaintiff lacks Article III standing. *See generally* Doc. 14. What's more, defendant filed a 12(b)(6) motion to dismiss for failure to state a claim—not a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See* Doc. 13 at 1; *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction."); *Blood v. Labette Cnty. Med. Ctr.*, No. 22-cv-04036-HLT-KGG, 2022 WL 11745549, at *2–3 (D. Kan. Oct. 20, 2022) (deciding standing as an element of subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss).

Despite defendant's blended argument, the court concludes the proper analysis focuses on the real-party-in-interest requirement under Rule 17(a). *See, e.g.*, *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228, 1228 n.6 (10th Cir. 2012) (concluding the question of whether third party to contract had ability to pursue contract claims was a question "in its ordinary sense of statutory or

contractual standing" not Article III standing); *First Am. Title Ins. Co. v. NW Title Ins. Agency*,

906 F.3d 884, 890 (10th Cir. 2018) (concluding plaintiffs satisfied constitutional standing but the

issue there was which entity can raise the claims—a real-party-in-interest question—not a

jurisdictional one); *Fireman's Fund Ins. Co. v. CRST Van Expedited, Inc.*, No. 08-2551-CM,

2010 WL 4682367, at *2 (D. Kan. Nov. 10, 2010) (finding the "appropriate question" was not

Article III standing, but "whether Fireman's Fund [was] the real party in interest under Fed. R.

Civ. P. 17" because the parties disputed who had the right to bring the particular cause of action).

The court thus trains its analysis on this question:  whether plaintiff is the real party in interest

for this contract claim.[3]

Defendant properly challenges plaintiff's status as a real party in interest on a Rule

12(b)(6) motion.  *See Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 916 (D.

---

[3]      The court has an independent obligation to satisfy itself that plaintiff has constitutional standing, so it addresses that requirement briefly in this footnote.  *See Rector v. City and Cnty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) ("Standing, however, raises jurisdictional questions and we are required to consider the issue *sue sponte* to ensure that there is an Article III case or controversy before us." (internal quotation marks and citation omitted)).  At the motion to dismiss stage, a plaintiff needs to "'clearly . . . allege facts demonstrating' each element" of Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  The court concludes that plaintiff has pleaded the elements of standing sufficiently.

Article III standing requires the plaintiff to demonstrate:  (1) an injury in fact to a legally protected interest; (2) a causal connection, meaning the injury is fairly traceable to the challenged act of the defendant; and (3) that the injury is likely redressable by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).  Ultimately, these three elements "ensure that the parties to any litigation have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'"  *Colony Ins. Co.*, 698 F.3d at 1228 n.6 (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)).

There's no question of adverseness.  Plaintiff has satisfied the injury in fact requirement by alleging defendant "stole approximately 300k from [his] company[,]" "illegally held [his] Dot number hostage[,]" "forced [him] to [c]ease operations[,]" and damaged his business and personal credit.  Doc. 1 at 4 (Compl. ¶¶ II–IV).  Plaintiff's allegations trace defendant's conduct to his purported injuries.  *See id.* And plaintiff's harm is redressable by a favorable decision from the court, as he seeks damages, release of the contract, and removal of a UCC lien to rectify the alleged wrongs.  *Id.*  The court is satisfied that plaintiff has discharged his pleading obligations to allege constitutional standing for the contract claim.

Kan. 1997) ("12(b)(6) motions may be grounded on an objection to a plaintiff's status as a real

party in interest."); *Bath*, 2013 WL 3296603, at *2 ("[T]he court considers the issue of whether

claims are being prosecuted by a party other than the real party in interest pursuant to Federal

Rules of Civil Procedure 12(b)(6) or 56.").  So, the next section outlines the governing 12(b)(6)

standard.

### B.    12(b)(6) Legal Standard

Under Rule 12(b)(6), a party may move to dismiss an action for failing "to state a claim

upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule

12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S.

at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual

allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion

couched as a factual allegation[.]'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  The court also

needn't "accept as true" any "factual allegations that contradict" properly considered documents.

*Kennedy v. Peele*, 552 F. App'x 787, 792 (10th Cir. 2014) (quotation cleaned up); *GFF Corp. v.*

*Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (deciding on review

of 12(b)(6) order that "[m]ere legal conclusions and factual allegations that contradict such a

properly considered document are not well-pleaded facts that the court must accept as true").

"Ordinarily, dismissal of a pro se complaint for failure to state a claim is proper only where it is

obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give

him an opportunity to amend." *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018)

(quotation cleaned up).

An affirmative defense—if established—can provide grounds to grant a motion to

dismiss.  *See Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *Jiying Wei v. Univ. of

Wyo. Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 739–40 (10th Cir. 2019) (explaining it's

appropriate to resolve an affirmative defense on a 12(b)(6) motion to dismiss).  But the court

may dismiss a complaint because of an affirmative defense "only when the complaint itself

admits all the elements of the affirmative defense by alleging the factual basis for those

elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).  A Rule

17(a) real-party-in-interest challenge is treated like an affirmative defense.  *See Lexington Ins.

Co. v. W. Roofing Co.*, No. 03-2036-JWL, 2003 WL 22205614, at *1 (D. Kan. Sept. 23, 2003)

(concluding defendant "failed to meet its burden of showing that plaintiff is not the real party in

interest[,]" denying defendant's motion to dismiss, and noting real-party-in-interest question is

"generally treated as something in the nature of an affirmative defense" (internal quotation marks

and citation omitted)); *Wolfson v. Nutt*, No. 08-3190-GLR, 2011 WL 5900812, at *2 (D. Kan.

Nov. 23, 2011) ("[A]n objection regarding real party in interest is treated like an affirmative

defense[.]").

For the court to evaluate whether to grant defendant's 12(b)(6) motion, it must consider

whether the facts support a real-party-in-interest affirmative defense.  So, the court recounts the

facts properly considered on this motion.

### C. Background

The court construes the facts in the light most favorable to plaintiff, as the nonmovant.

*See, e.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (emphasizing the court must accept well-pleaded allegations as true and "construe them in the light most favorable to the plaintiff" on a 12(b)(6) motion to dismiss).

Plaintiff owns Dark Night Transport LLC. *See* Doc. 1 at 2 (Compl. ¶ I.B.) (listing his job title as Owner); Doc. 14 at 12 (plaintiff signing contract as Owner of Dark Night Transport LLC). According to plaintiff, Dark Night is no longer operating. Doc. 16 at 2. But the North Dakota Secretary of State website reports that Dark Night Transport LLC remains an active limited liability company in good standing. *See Business Search*, N.D. SEC. OF STATE, https://firststop.sos.nd.gov/search/business (last visited Jan.14, 2025) (search for "Dark Night Transport LLC"); Doc. 18-2 (Def. Ex. B).[4]

Dark Night and TAFS entered a "Factoring Services Agreement" in December 2020. Doc. 14 at 7.[5] Plaintiff asserts *he* entered the agreement with TAFS. Doc. 1 at 4 (Compl. ¶ III). But the contract itself tells another story:

---

[4]     "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). The court may take notice of "its own files and records, as well as facts which are a matter of public record." *Id.* (quotation cleaned up). A Secretary of State website is a public record that the court may judicially notice. *See, e.g.*, *City of Torrance v. Hi-Shear Corp.*, No. 17-cv-07732-FWS-JPR, 2023 WL 5421805, at *1 n.1 (C.D. Cal. July 18, 2023) (taking judicial notice of state secretary of state website as public record for purposes of 12(b)(6) motion to dismiss).

[5]     Plaintiff refers in his Complaint to a written agreement for factoring services. Doc. 1 at 4 (Compl. ¶ III). Defendant attached the purported contract as an exhibit to its motion. *See* Doc. 14 at 7–31 (Def. Ex. A). Plaintiff didn't dispute that this attachment is the relevant contract and, indeed, attached a similar copy to his Motion to Strike. *See* Doc. 16-1. The court considers this contract in this Order. *See GFF Corp.*, 130 F.3d at 1384 ("Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

pursuant to a writing signed by the parties hereto. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement. Signature received via facsimile or electronically shall be binding as to the signor in the same capacity as an original signature.

16.   **Authorization to Release Insurance Information**.  As a material condition of this Agreement, Client agrees to execute the Authorization to Release Insurance Information form attached hereto as **EXHIBIT F** for each of its insurers.  Such authorization shall be irrevocable during term of this Agreement.

17.   **Liquidated Damages for Failure to Present Accounts**.  Client acknowledges and agrees that TAFS has incurred significant due diligence expenses and administrative costs in connection with the establishment of this Agreement.  In the event that Client executes this Agreement but fails to present its Accounts to TAFS for purchase as required hereunder throughout the entire term hereof, or otherwise desires or attempts to terminate or cancel this Agreement without doing so throughout the entire term hereof, then Client agrees to pay to TAFS liquidated damages in the amount of $2,500.00 to reimburse TAFS for its due diligence expenses, administrative costs, and related damages resulting from such default.  The foregoing shall not be construed to permit Client to terminate or cancel this Agreement prior to expiration of the stated term hereof, regardless of reason, by payment of such amount or otherwise. The parties acknowledge and agree that the liquidated damages payable to TAFS hereunder shall be in addition to, not in lieu of, any and all other remedies available to TAFS for breach of this Agreement by Client, including, but not limited to, recovery of compensatory damages from Client and the guarantor(s) executing the Personal Guaranty form attached hereto (i.e., recovery of the aggregate amount of the Base Fees otherwise payable hereunder for the term hereof), as well as attorneys' fees and costs incurred by TAFS.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, effective as of the day and year first above written.

"Client":
**Dark Night Transport LLC**

By:
*Christopher Coon*          Christopher Coon          Owner
Signature                    Full Name                 Title

"TAFS":
**TAFS, Inc.**

By:
Jaime Heredia, Vice President - Sales

Doc. 14 at 12.

In the contract, TAFS agreed to purchase Dark Night's accounts receivable, less a base service fee. *Id.* at 7.  Plaintiff now alleges TAFS was "stealing and withholding funds[,]" and "running a Ponzi scheme[,]" resulting in $300,000 in losses to plaintiff's company.  Doc. 1 at 4 (Compl. ¶ II).  He argues defendant breached the contract by illegally holding his Department of Transportation number "hostage" and forcing him to "[c]ease operations [and] . . . shut down" his business. *Id.* (Compl. ¶ III).  Plaintiff says defendant has "violated all respects of the contract and ruined my company and its name." *Id.*  Plaintiff also executed a Personal Guaranty in connection with the agreement.  Doc. 16-1 at 23.  Plaintiff personally guaranteed that if Dark Night failed to perform, plaintiff would assume Dark Night's obligations under the Factoring

Services Agreement.  *Id.*

With that background, the court addresses whether plaintiff is the real party in interest here.

### D.    Real Party in Interest Under Fed. R. Civ. P. 17

Recall that defendant bears the burden to show that plaintiff isn't the real party in interest. *Lexington Ins. Co.*, 2003 WL 22205614, at *1.  Determining whether plaintiff qualifies as the real party in interest is a substantive issue.  *K-B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985) (determining Kansas's substantive law governed whether plaintiff was real party in interest on fraudulent misrepresentation claim).  And, because here, the court is asserting its diversity jurisdiction, it applies the forum state's choice-of-law rules to all substantive issues.  *U.S. Cellular Inv. Co. of Okla. City, Inc. v. Sw. Bell Mobile Sys., Inc.*, 124 F.3d 180, 182 (10th Cir. 1997) (applying forum state's choice-of-law rule on Rule 17(a) challenge); *Rainbow Commc'ns, LLC v. Landover Wireless Corp.*, No. 19-cv-2187-JAR-GEB, 2019 WL 3239348, at *3 (D. Kan. July 18, 2019) ("A federal court sitting in diversity must look to state law to determine whether a plaintiff is the real party in interest.  Under Kansas law, a real party in interest possesses the right sought to be enforced.").

Defendant asserts that Kansas law governs because the contract at issue is based on a Kansas choice-of-law clause.  Doc. 14 at 3; *id.* at 11 (Def. Ex. A) (showing contractual provision designating Kansas law as governing law).  Plaintiff's response to the motion never disputes this proposition.  *See generally* Doc. 16.  "'Federal courts in Kanas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules.'"  *Textron Aviation, Inc. v. Superior Air Charter, LLC*, 420 F. Supp. 3d 1186, 1191 (D. Kan. 2019) (quoting *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1273 (D. Kan. 1998)); *see also Brenner v.*

*Oppenheimer & Co.*, 44 P.3d 364, 375 (Kan. 2002) (explaining that when an agreement contains a choice-of-law clause, "Kansas courts generally effectuate the law chosen by the parties to control the agreement").  And in any event, where "a party fails to make 'a clear showing that another state's law should apply,' Kansas choice of law principles require a court to default to Kansas substantive law."  *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 982 (10th Cir. 2014) (quoting *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007)).

In sum, the contract at issue here contains a choice-of-law clause.  It selects Kansas law.  The forum state is Kansas.  And plaintiff never argues another state's law should apply.  *See* Doc. 14 at 11 (Def. Ex. A) (showing contractual choice-of-law provision selecting Kansas law).  So, the court applies Kansas law to determine whether plaintiff is the real party in interest for the contract claim asserted in the Complaint.

### 1.    Kansas Substantive Law

Defendant, citing cases addressing Kansas's jurisdictional standing doctrine, argues that plaintiff can't maintain this suit.  *See* Doc. 14 at 3–4.  According to defendant, plaintiff wasn't a party to the contract, didn't personally own the accounts that were the subject of the contract, is a distinct entity from Dark Night, and signed the contract only as a representative of Dark Night.  *Id.*; Doc. 18 at 2.  And, defendant suggests, those things don't add up to the real party in interest.  Doc. 14 at 3.  Plaintiff, for his part, reminds the court that he signed and initialed the contract.  Doc. 16 at 1.  He also signed a personal guaranty of Dark Night's contractual obligations.  *Id.* at 2.  Plus, plaintiff asserts that his business isn't operating anymore, so plaintiff is the correct person to enforce the contract.  *Id.*

Beginning with the obvious, parties to a contract have the authority to enforce it.  *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 675 (10th Cir. 2007) ("In causes of action arising

from a contract, only parties to the contract may enforce the contract because 'the person who possesses the right sought to be enforced' is the real party in interest." (quoting *O'Donnell v. Fletcher*, 681 P.2d 1074, 1076 (Kan. 1984)). But sometimes third parties can enforce the contract. "Contractual rights are also *assignable* to a third party under Kansas law." *Wolfson*, 2011 WL 5900812, at *2 (emphasis added) (citing *Wade*, 483 F.3d at 675); *see also Alldritt v. Kan. Centennial Global Exposition, Inc.*, 371 P.2d 181, 187 (Kan. 1962) ("[R]ights under ordinary contracts are assignable . . . . [A] cause of action for damages for breach of contract is assignable."). And, for LLCs, Kansas "also provides for *distributing assets* to . . . members after their dissolution and a winding up period." *Wolfson*, 2011 WL 5900812 (emphasis added) (citing Kan. Stat. Ann. § 17-76,119(a)). What's more, intended third party beneficiaries to contracts can enforce those contracts. *Kincaid v. Dess*, 298 P.3d 358, 365 (Kan. Ct. App. 2013) (citing *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219 (Kan. 2005)).

But our court—applying Kansas law—has held that shareholders of a corporation aren't the real party in interest to secure "redress for injuries to the corporation." *Atkins v. Heavy Petrol. Partners, LLC*, 86 F. Supp. 3d 1188, 1201 (D. Kan. 2015) (addressing whether corporate shareholder could assert fraud claim where company owned the lease at issue). This holding, it seems evident, produces a parallel rule for LLCs—other than those who have dissolved. Membership in an LLC likewise doesn't confer—at least not automatically—real-party-in-interest status on those members to enforce the LLC's contract rights. Kansas law recognizes that an LLC is a legal entity distinct from its members. *See* Kan. Stat. Ann. § 17-7673(b).

So, Kansas law identifies when a person associated with a LLC properly can assert the LLC's contract rights. Next, the court applies these principles to the facts alleged here.

## 2. Applying Those Legal Principles to Facts Alleged Here

In essence, defendant argues that plaintiff can't enforce the contract in this suit.  *See* Doc.
14 at 3 ("Plaintiff Coon . . . is not a proper party to this case as he lacks standing and/or is not the
real party in interest with respect to any breach of contract claim concerning the Factoring
Services Agreement.").  Defendant is correct.  Plaintiff hasn't alleged facts allowing the court to
find or infer that he is a party to the contract, received the right to enforce the contract through
his personal guaranty, was assigned Dark Night's rights, or received the contract as an asset upon
dissolution.

*First*, it's evident.  Plaintiff isn't a party to the contract.  He signed it as a representative
of Dark Night.  *See* Doc. 14 at 7, 12 (Def. Ex. A) (agreement made between TAFS and Dark
Night, signed by Christopher Coon as "Owner").  And plaintiff can't place himself in Dark
Night's shoes simply because he is a member of the LLC.  *See Peterson*, 349 P.3d at 1273–74
(discussing jurisdictional standing but explaining plaintiff's companies "are all legal entities
separate and distinct from [plaintiff]" and accordingly, plaintiff "cannot show the injury affected
him in a personal way, and he cannot assert the claims of [the companies]").

*Next*, plaintiff also didn't become a party to the contract by signing the personal guaranty.
*See* Doc. 16 at 2 (plaintiff arguing that he personally guaranteed the contract); Doc. 18 at 2 n.1
(defendant arguing that it hasn't enforced the personal guaranty, and it isn't the basis for
plaintiff's Complaint); *see also* Doc. 1 (Compl.) (not mentioning the personal guaranty).  The
personal guaranty gives TAFS a right to enforce the agreement's obligations against plaintiff, *if*
Dark Night defaults on its obligations.  *See* Doc. 16-1 at 23.  But it doesn't give plaintiff a
personal right to enforce the Factoring Services Agreement against TAFS.  Kansas law views a
personal guaranty as "an obligation collateral to another contractual duty to perform."  *Iola State*

14

*Bank v. Biggs*, 662 P.2d 563, 567 (Kan. 1983). It is, in simplest terms, a "separate contract." *Id.* The guarantor warrants "that the thing guaranteed to be accomplished by the principal shall be done[,]" and it's "not an engagement jointly with the principal to do the act." *Id.*

The Kansas Supreme Court has held—albeit in a different procedural posture—that a plaintiff must plead a separate cause of action to enforce a guaranty, even when the guaranty was attached as an exhibit to the contract. *See Hoover Equip. Co. v. Smith*, 422 P.2d 914, 918–19 (Kan. 1967). It follows that the personal guaranty doesn't become part of the Factoring Services Agreement, such that plaintiff secures authority to enforce it. *Cf. Kincaid*, 298 P.3d at 366 ("When a writing is incorporated by reference, it becomes a part of the contract only so far as to effectuate the specific purpose intended." (citing *Starr v. Union Pac. Ry. Co.*, 75 P.3d 266, 269 (Kan. Ct. App. 2003)). Moreover, plaintiff doesn't premise his breach of contract claim on the personal guaranty. He never alleges any facts allowing the court to find or infer that TAFS and Dark Night incorporated a right allowing plaintiff to enforce Dark Night's rights into the personal guaranty. Thus, the personal guaranty doesn't confer on plaintiff the ability to assert breach of the Factoring Services Agreement.

*Plus*, neither party has asserted that Dark Night assigned its rights to plaintiff in his personal capacity—and there's nothing in the Complaint allowing the court to infer that it did so. Likewise, neither party has mustered alleged facts (or legal argument) justifying a finding that plaintiff was intended as a third-party beneficiary of the contract. Simply, there's nothing in the Complaint allowing the court to infer that he was.[6]

---

[6]    A third party may enforce a contract as a beneficiary when "some provision in the contract . . . operates to their benefit." *Kincaid*, 298 P.3d at 365. The party "does not need to be personally named . . . as long as he or she is a member of a designated class or identifiable as a benefitted person." *Id.* (citing *Hartford Fire Ins. Co. v. W. Fire Ins. Co.*, 597 P.2d 622, 632 (Kan. 1979)).

*Finally*, plaintiff plausibly could become the real party in interest if the LLC had dissolved—but plaintiff comes up short on that theory, too.  Plaintiff asserts that Dark Night is no longer operating.  Doc. 16 at 2.  But he never alleges that Dark Night has dissolved.  *See Wolfson*, 2011 WL 5900812, at *2 ("After the company dissolved in 2003, only two assets reverted to [plaintiff]—neither of which is the lease agreement at issue.").  Indeed, defendant emphasizes that Dark Night is still in good standing with the North Dakota Secretary of State.[7] *See* Doc. 18 at 2, 2 n.2; Doc. 18-2 (Def. Ex. B).  And, consequently, there's nothing to suggest plaintiff has a right to assert a breach of contract claim.

In sum, plaintiff isn't the real party in interest for the contract claim he asserts in his Complaint.  At bottom, plaintiff's contract claim turns on him forming a contract with defendant.  *See* Doc. 1 at 4 (Compl. ¶ III.); Doc. 16 at 1–2.  The court takes plaintiff's well-pleaded facts as true and draws all inferences in his favor.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,*

---

Two provisions in the contract here identify designated classes for which plaintiff qualifies.  *First*, the contract provides that "to induce TAFS to enter into this Agreement and to purchase the Accounts from Client, . . . one or more *owners of Client* shall execute the Personal Guaranty form" and "unconditionally guaranty the obligations of Client under this Agreement."  Doc. 14 at 9 (Def. Ex. A) (emphasis added).  But this provision doesn't serve plaintiff's benefit as an *owner* of the LLC; it merely benefits TAFS, providing security for Dark Night's contractual obligations.

The same rationale applies, *second*, to the liquidated damages provision in the contract.  It provides that "the liquidated damages payable to TAFS hereunder shall be in addition to, not in lieu of, any and all other remedies available to TAFS for breach of this Agreement by Client, including . . . recovery of compensatory damages from Client and the *guarantor(s) executing the Personal Guaranty* form attached[.]"  *Id.* at 12 (Def. Ex. A) (emphasis added).  This provision solely operates to benefit TAFS, not plaintiff as guarantor.

[7]     Recall that on a 12(b)(6) motion, the court must take plaintiff's allegations as true, but needn't "accept as true any factual allegations that contradict" properly considered documents.  *Kennedy*, 552 F. App'x at 792 (quotation cleaned up).

So, to the extent plaintiff suggests Dark Night has dissolved, the court needn't take this allegation as true.  Plaintiff may not operate Dark Night anymore, but that doesn't prevent the company—which public records indicate still exists—from enforcing its rights in court.  Plaintiff hasn't argued or alleged any facts suggesting that Dark Night lacks capacity to sue at this point.

861 F.3d 1081, 1105 (10th Cir. 2017). But the court can't imagine *potential* facts and draw inferences from them. *See Requena*, 893 F.3d at 1210 ("[W]e will not hypothesize sufficient facts to state a claim, especially when the materials attached to the complaint do not reasonably support doing so[.]"); *E.K.J. v. Roberts*, No. CIV-14-906-M, 2015 WL 1442556, at *1 (W.D. Okla. Feb. 17, 2015) (emphasizing that case law "requires a liberal construction of pro se complaints; however, the Court is not required to imagine or assume facts in order to permit a complaint to survive" (emphasis omitted)). The Complaint simply provides no basis for a finding that plaintiff has authority to enforce the contract at issue.

So, plaintiff isn't the real party in interest to assert the contract claim alleged. But does this conclusion mean the court should dismiss the Complaint?

### E.    Next Steps

The court can't dismiss the case instantly when a plaintiff is decidedly *not* the real party in interest. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not [immediately] dismiss an action for failure to prosecute in the name of the real party in interest[.]"). Instead, the court first must allow "a reasonable time . . . for the real party in interest to ratify, join, or be substituted into the action." *Id.*

The "Tenth Circuit has instructed" that courts should not read Rule 17(a) "literally[.]" *Payne v. McKune*, No. 06-3010-JWL, 2007 WL 1019193, at *2 (D. Kan. Apr. 4, 2007). Put another way, parties should not "*always* be given a reasonable time to substitute the appropriate real party in interest." *Id.* (emphasis in original). Rule 17(a)(3) was designed to "prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004) (quotation cleaned up). To decide whether to extend leave to substitute, our Circuit evaluates

"whether the plaintiff engaged in deliberate tactical maneuvering . . . [and] whether the defendant was prejudiced thereby." *Id.* And "even a mistake that should have been patently obvious does not automatically foreclose a later substitution, so long as the plaintiff did not act in bad faith[.]" *Id.* Here, defendant hasn't identified any "tactical maneuvering[,]" bad faith, or prejudice to defendant derived from plaintiff's pleading mistake.

So, the court must allow a reasonable time for plaintiff to substitute the apparent real party in interest—the LLC. The court thus denies defendant's Motion to Dismiss. *See Hermreck v. City of Leawood*, No. 10-2368-JWL, 2010 WL 3781707, at *3 (D. Kan. Sept. 21, 2010) (denying defendants' motions to dismiss on real party in interest issue but noting "the action will be dismissed if plaintiffs fail to substitute or join" the real party in interest by court's deadline); *Spencer v. Hartwig, Inc.*, No. 10-1206-EFM, 2011 WL 13101719, at *1 (D. Kan. Mar. 31, 2011) (denying motion to dismiss but granting plaintiff's motion to substitute party within reasonable time); *Ehsan v. Patel*, No. 06-2174-CM, 2007 WL 496861, at *2–3 (D. Kan. Feb. 13, 2007) (denying motion to dismiss on real party in interest grounds but granting plaintiff leave to amend).

Applying this principle, the court orders that plaintiff must move to substitute Dark Night Transport LLC as the real party in interest within 30 days of this Order. If he fails to do so, the court will dismiss the case. And the court cautions plaintiff: an LLC "'may appear in the federal courts only through licensed counsel.'" *Roscoe v. United States*, 134 F. App'x 226, 227 (10th Cir. 2005) (quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993)); *see also Wolfson*, 2011 WL 5900812, at *3 ("The Court grants the LLC, as the real party in interest, thirty days from the date of this order to enter an appearance in this action. Because a limited liability company may appear in federal court only through licensed

counsel, the company may not proceed with this action without counsel." (quotation cleaned up)).

With the Motion to Dismiss decided, the court's analysis concludes with plaintiff's last motion.

## III.   Motion to Terminate Contract (Doc. 17)

Plaintiff has filed a Motion to Terminate the Contract with Defendant (Doc. 17).  He alleges that defendant "predatorily ignored" his attempts to terminate the contract.  Doc. 17 at 1.  And he asks the court to direct defendant to terminate the "illegal contract" and "release and remove the UCC 1 lien" against plaintiff.  *Id.* at 2.  Defendant construes plaintiff's motion as one seeking partial summary judgment.  Doc. 20 at 1.  It argues that Dark Night hasn't issued a "proper notice of non-renewal[.]"  *Id.* at 4.  What's more, defendant asserts, plaintiff hasn't presented any evidence that "TAFS caused Dark Night to fail as a result of 'stealing' and overcharging Dark Night's account[.]"  *Id.*  So, defendant argues, plaintiff can't prove he's entitled to a released contract.  *Id.*

The court needn't address the substance of either party's arguments on the current record.  Plaintiff isn't the real party in interest, and so he can't prosecute this action personally on behalf of Dark Night.  Nor can he prosecute Dark Night's rights on another front.  Plaintiff isn't Dark Night.  The court thus denies plaintiff's Motion to Terminate.  As long as he's the party improperly seeking relief, his request is moot.  *See Ordonez v. Air Serv Corp.*, No. 13-CV-67-DAK, 2018 WL 618425, at *1 (D. Utah Jan. 29, 2018) (concluding plaintiff's motion to reconsider was moot because plaintiff wasn't the real party in interest).

## IV.   Conclusion

Plaintiff likely has a practical investment in this contract dispute.  But that pragmatic

involvement doesn't confer on him the ability to sue under Kansas law and Federal Rule of Civil Procedure 17(a). The court gives plaintiff 30 days to file a motion to substitute the real party in interest for the current plaintiff. If plaintiff fails to do so by February 27, 2025, the court must dismiss this case entirely.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Strike (Doc. 16) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Dismiss (Doc. 13) is denied. Plaintiff is granted until February 27, 2025, to move to substitute Dark Night Transport LLC as plaintiff before the case is dismissed entirely.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Terminate Contract (Doc. 17) is dismissed as moot.

**IT IS SO ORDERED.**

**Dated this 28th day of January, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**